UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAMIAN GOVER, an individual, on behalf of himself and all others similarly situated, | ) ) ) | No. CV 10-9988-SVW (RZx) |
| | ) | ORDER DENYING PLAINTIFFS' |
| | ) | MOTION FOR CLASS CERTIFICATION; |
| Plaintiffs, | ) | DEFENDANT'S MOTION FOR LEAVE TO |
| | ) | FILE A SURREPLY |
| v. | ) | |
| | ) | [51, 101] |
| BEST BUY STORES, L.P., a | ) | |
| Minnesota limited partnership; | ) | |
| BEST BUY CO., INC., a Minnesota | ) | |
| corporation, and DOES 1 through | ) | |
| 50, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

## I.    INTRODUCTION

Plaintiff Damion Gover brings this suit alleging that Defendant Best Buy misclassified him and all California Assistant Managers ("AM's") as exempt from California statutory overtime and break time requirements.  This Motion for Class Certification is brought on behalf of all AM's, as well as subclasses based on the three types of AM's detailed below, as well as former managers whose employment ended after November 12, 2006.  (Not. Mot. vi).

Defendant Best Buy is a consumer electronics retailer with 123 stores in California. (Humphrey Decl. Ex. 8, Bonura Depo. 118:21-125:6). Stores are organized into eight nationwide territories, each of which is managed by a retail field officer. (Humphrey Decl. Ex. 3, Best Buy 2009 10K at 7). Each territory is divided into districts. In each district, a team of district managers oversees operations for the stores in that district, including human resources, operations, services, and customer solutions. Humphrey Decl. (Ex. 2, Moriarty Decl. ¶ 3).

The local management team at a California Best Buy store consists of a General Manager ("GM") and three or more Assistant Managers (AM's). (Humphrey Decl. Ex. 8, Bonura Depo. 70:11-71:6). Supervisors and ten to forty (or more) hourly Associates report to each AM on any given shift. (<u>See, e.g.</u>, Def. Ev. App. Ex. 9, Alvarez Decl. ¶ 4; Def. Ev. App. Ex. 26, Parra Decl. ¶ 6).

There are three different categories of AM's, each of which is a proposed subclass in this action. (<u>See</u> Grombacher Decl., Exs. C, D, E). First, Customer Solutions and/or Experience Managers ("CSM's") have official responsibilities of analyzing sales performance against goals, monitoring key operations and metrics, managing staff to achieve store goals, participating in meetings, and assisting in the implementation of new programs. (<u>See</u> Grombacher Decl., Ex. E). Practically, Plaintiff describes the "overwhelming responsibility" in this role as helping customers and driving sales. (Def. Ev. App. Ex. 41, Gover Depo. 98:7-11).

Second, Product Process Managers ("PPM's") have official responsibilities of managing inventory and warehouse functions, leading

day-to-day sales floor activities, supervising and training supervisors and sales associates, acting as manager on duty, and assisting in improving operations. (See Grombacher Decl., Ex. C). Practically, Plaintiff describes this role as making sure that all products are available at all times for customers, noting that most customers grab products off the shelves without ever speaking to an employee. (Def. Ev. App. Ex. 42, Gover Depo. 242:2-8).

Third, Operations Managers ("OM's") have official responsibilities of managing cash registers and customer service, leading day-to-day sales floor activities, acting as manager on duty, and assisting in improving operations. (See Grombacher Decl., Ex. D). Practically, Plaintiff describes this position as a human resources manager. (Def. Ev. App. Ex. 41, Gover Depo. 28:13-20).

AM's may frequently serve in the role of "Sales Lead." The Sales Lead works on the sales floor, matching up customers and hourly employees, providing on-the-spot training to employees, and also engaging with customers, as necessary. (See, e.g., Grombacher Decl., Ex. I, at BB/GOV - 000796; Humphrey Decl. Ex. 10, O'Neal Decl. ¶ 6). AM's may also frequently serve in the role of "Manager on Duty." The Manager on Duty handles customer issues escalated from employees, including complaints, price matching requests, and other instances where customers seek to speak to a manager. (Grombacher Decl., Ex. C; Def. Ev. App., Lisby Decl. ¶ 8). Plaintiffs contend that, due to systematic under-staffing, AM's who rotate through roles of Sales Lead and Manager on Duty often spend a majority of their time engaged in customer assistance and sales activities normally handled by hourly associates. (See, e.g., Moriarity Decl. ¶ 13; Gover Decl. ¶ 8).

Plaintiffs argue that while staffing levels in Best Buy stores averaged 132 employees in 2006, many California stores now operate with approximately 80 employees per store.  (Humphrey Decl. Ex. 6, Best Buy 2006 10K at 8; Humphrey Decl. Ex. 8, Bonura Depo. 68:12-69:5). Plaintiffs contend that a reduction in headcount has resulted in longer hours for salaried employees and an increase in non-managerial tasks for AM's.  (Mot. 4).

A number of Best Buy store operations are largely standardized and centralized.  (See, e.g., Humphrey Decl., Ex. 1, Best Buy 2011 10K, p. 6).  For example, Best Buy has an automated merchandise replenishment system which automatically replaces merchandise as it is sold, though local store employees may input suggested changes.  (Humphrey Decl. Ex. 10, Dias Depo. 60:1-19). Merchandise placement is largely designated by diagrams centrally created by the corporate organization ("planograms"), though some product placement is done according to local employee discretion.  (Id. at 71:13-73:21).  Items selected for newspaper advertising are centrally controlled by the corporate organization, with pricing adjustments automatically printed out at the store. (Id. at 81:14-82:12).

## II.  Legal Standard for Class Certification

In order to certify a class under Federal Rule of Civil Procedure 23, a plaintiff must establish that the proposed class meets all of the Rule 23(a) requirements and at least one Rule 23(b) requirement. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).

Federal Rule of Civil Procedure 23(a) states that, "[o]ne or more members of a class may sue or be sued as representative parties on

behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

A potential class must demonstrate pursuant to Rule 23(b) that: (1) prosecuting separate actions risks inconsistent judgments or risks impairing the interests of other members not part of the litigation; or (2) the party opposing the class has acted or refused to act on grounds that generally apply to the class such that final injunctive or declaratory relief is appropriate; or (3) common questions of law or fact predominate over questions affecting individual members, and that a class action is superior to other available methods of adjudicating the case.  Pertinent considerations under 23(b)(3) include: (a) the class members' interests in individually controlling the litigation; (b) the extent of any litigation already commenced; (c) the desirability of concentrating the claims in a particular forum; and (d) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b).

Under Rule 23(a)(2), not only must a plaintiff show that the claims depend upon a common contention, but also that "it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).  What matters is not raising common questions, but rather the capability to generate common answers that

will drive the resolution of the litigation; dissimilarities within the proposed class have the potential to impede the generation of common answers. _Dukes_, 131 S. Ct. at 2551.

Under Rule 23(b)(3), the court must determine whether common claims "predominate." The court looks at whether proposed classes are sufficiently cohesive to warrant adjudication by representation, focusing on the relationship between the common and individual issues. In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009). In wage and hour cases regarding employee misclassification, the party seeking certification must be able to demonstrate that misclassification is the rule rather than the exception. Marlo v. United Parcel Serv., 639 F.3d at 947 (9th Cir. 2011). Certification is not appropriate where the court determines that resolution requires "fact-intensive, individual analysis of each employee's exempt status." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 946-47 (9th Cir. 2009).

In deciding whether to certify a case involving state law claims, the court looks at the substantive elements of the cause of action under state law. See Computer Economics Inc. v. Gartner Group Inc., 50 F. Supp. 2d 980, 990 (S.D. Cal. 1999). Even where the burden in the underlying substantive state law claim rests with the defendant, the party seeking certification bears the burden of showing that the requirements of Rule 23 are met. Marlo, 639 F.3d 942, 947. Rule 23 is not a mere pleading standard; rather, a party seeking class certification must affirmatively demonstrate that all of the requirements are met in fact. _Dukes_, 131 S. Ct. at 2551. While the court cannot evaluate the merits of a plaintiff's claims, it can

compare the claims, the type of evidence necessary to support a class-wide finding on those claims, and the bearing of those considerations on Rule 23 certification.  <u>Marlo</u>, 639 F.3d at 949.[1]

**III.     Application of Class Certification Standard**

    **A.     Commonality under Rule 23(a)(2)**

Plaintiffs do not adequately distinguish between the requirement of Rule 23(a)(2) that "there are questions of law or fact common to the class," and the requirement of Rule 23(b)(3) that "questions of law or fact common to the class members predominate."[2]  As Defendant Best Buy contends, this alone provides adequate basis to deny Plaintiffs' Motion, as Plaintiffs do not sufficiently brief Rule 23(a)(2) commonality and have not carried their burden of showing that any common questions are capable of class-wide resolution under Rule

---

[1]     The Court need not and does not consider the arguments in Defendant's Summary of Evidence, therefore the Court need not rule on Plaintiffs' objections to the arguments contained in Defendant's Summary of Evidence. (Dkt. No. 95).  However, Defendant's Opposition does in places cite to the Summary of Evidence which in turn cites to the Evidence Appendix.  The Court treats such references as directly to the Evidence Appendix.

Furthermore, the Court need not address Defendant's objections to declarations of Plaintiffs' expert witnesses Fitzpatrick, Gorman, and Locker because the Court denies Plaintiffs' Motion regardless of this evidence. (Dkt. Nos. Nos. 86, 88, 111).  Plaintiffs' objections to the time allocations in Defendant's witness declarations are overruled because they go to the weight of the evidence and not the admissibility. (Dkt. No. 97, Pl. Ev. Objections, 1-11).  The Court declines to rule on Plaintiffs' specific evidentiary objections on pages 12-44 of Plaintiffs' Evidentiary Objections (Dkt. No. 97) because the Court need not and does not consider any of the material to which Plaintiffs object.

[2] While Plaintiffs' Motion was filed on May 30, 2011, three weeks before the Supreme Court decided *Dukes* on the basis of Rule 23(a)(2) commonality, Plaintiff's Reply was filed on August 3, 2011 and nonetheless fails to adequately address Rule 23(a)(2), either generally or specifically in light of the <u>Dukes</u> ruling. <u>See generally</u>, <u>Dukes</u>, 131 S. Ct. 2541 (2011).

23(a)(2).  However, the Court need not rely on commonality under Rule 23(a)(2) in denying Plaintiffs' motion because Plaintiffs have failed to meet the predominance standard under Rule 23(b)(3).

**B.    Commonality under Rule 23(b)(3)**

**1.    Common Legal Issues**

Plaintiffs contend that common legal issues predominate for class members under Rule 23(b)(3).  Under California Law, an employer is required to pay overtime and provide meal and rest breaks to employees who do not qualify for a Wage Order exemption.  Cal. Lab. Code §§ 510, Wage Order 7-2001 §§ 1(3)(A)(1),11,12.  Persons employed in administrative, executive, or professional capacities may qualify for an exemption.  Wage Order 7-2001 §1(3)(A).  An employee's duties meet the test for an exemption if: (1) his duties involve management of a recognized subdivision; (2) he directs the work of two or more other employees; (3) he has authority to hire or fire or his recommendations as to hiring and firing are given weight; (4) he customarily and regularly exercises discretion and independent judgment; (5) he is primarily engaged in exempt duties; and (6) he earns a salary equivalent to at least two times the minimum wage.  Wage Order 7-2001 § 1(3)(A)(1).

Plaintiffs assert that AM's do not meet two of the these exemption requirements: (1) the regular exercise of discretion and independent judgment, and (2) spending a majority of work time engaged in exempt duties.  Plaintiffs further contend that in addition to the standard for an exemption under the statute, there is an additional test as to whether an individual is employed in an administrative, executive, or

professional "capacity." <u>See Bell v. Farmers</u>, 87 Cal. App. 4th 805, 811 (2001).

Under California law, the employer ultimately bears the burden of proof on all prongs of the administrative and executive exemptions as affirmative defenses. <u>Ramirez v. Yosemite Water Co. Inc.</u>, 20 Cal. 4th 785, 794-95 (1999).

### 2. Common Factual Issues

In seeking to satisfy the commonality element of Rule 23(b)(3), Plaintiffs contend that the following common factual issues predominate:

- Best Buy classifies all of its AM's as exempt employees, and AM's are normally scheduled for 50 hour weeks, more than enough to qualify for overtime under the statute if classified as non-exempt employees. (<u>See, e.g.</u>, Tab 3, Gover Decl. ¶ 3).

- Best Buy uniformly classifies the employees as exempt according to their job descriptions. (<u>See</u> Grombacher Decl., Exs. C-E).

- The work of AM's can be broken down into a finite list of tasks, and the Court can determine as a matter of law whether any given task is exempt. (Mot. 13).

- Best Buy has uniform training materials, which set expectations for AM job duties and responsibilities. (<u>See</u> Grombacher Decl., Exs. F-H).

- Plaintiffs contend that Best Buy's "customer centric" model results in requirements that AM's spend much of their day on the sales floor ensuring that every

customer is serviced. Specific policies that result in consistent activities on the sales floor include: (1) AM's act as Sales Leads to connect customers with employees and in interacting with customers (see, e.g., Grombacher Decl., Ex. I, at BB/GOV – 000796); (2) employees on the floor are not permitted to walk by a customer without asking if he has been assisted (Tab 3, Gover Decl. ¶ 8); (3) employees must approach any customer leaving the store without a purchase (Tab 2, Moriarty Decl. ¶ 13); and (4) AM's are encouraged to engage with customers in sales activities (Tab 2, Moriarty Decl. ¶¶ 10-11). Plaintiffs contend that the ultimate result is the common performance of non-managerial tasks by exempt employees. (See, e.g., Tab 2, Moriarity Decl. ¶ 7).

- Best Buy stores are systematically staffed through a computer-based nationwide scheduling system, adjusted for local needs. (Humphrey Decl. Ex. 18, Meyers Depo. 34:15-35:4). Plaintiffs allege that pressure to keep up sales while reducing headcount and paid hours has resulted in more work for AM's. (See, e.g., Tab 2, Moriarty Decl. ¶¶ 6-12).

- AM's consistently work extra hours without overtime pay in part to receive bonuses of up to 59% of salary for meeting corporate revenue and budget goals. (Humphrey Decl. Ex. 19, Rice Depo. 20:6-12, 55:6-12).

10

- AM's work with numerous standardized processes and procedures, including an automated inventory management system (Humphrey Decl. Ex. 10, Dias Depo. 59:5-60:19), corporate-controlled advertising (Id. at 81:6-82:20), corporate-standardized store product layouts ("planograms") (Id. at 71:13-16, 73:3-21), and centralized daily task lists for employees (Humphrey Decl. Ex. 20, Hansen Depo. 7:22-9:14).

Defendant Best Buy contends that both the duties performed and the time spent on any particular duty varies widely between AM's. Best Buy points to the variations demonstrated by even the testimony of Plaintiffs' own witnesses. For example, variations between task requirements at different store locations create disparities in how AM's spend their time:

- When PPM Fritz transferred between stores, variations in scheduling, product size, store size, and truck size, resulted in different AM time allocation for unloading and stocking shelves such that he was unable to estimate how much time he generally spent on these tasks. (Def. Ev. App. Ex. 39, Fritz Depo. 126:18-127:19).
- OM Hattoy testified that he spent an hour a day cashiering at one store, but did not operate the cash register at all when working at another store. (Def. Ev. App. Ex. 43, Hattoy Depo. 75:5-25). Similarly, at one store he spent 30 minutes per day on routine maintenance, but at another location he spent no time on

routine maintenance. (Def. Ev. App. Ex. 43, Hattoy
Depo. 75:15-22). He also found that at one store he
could spend less than an hour a week on loss prevention,
compared to two or three hours on loss prevention in
another store. (Def. Ev. App. Ex. 43, Hattoy Depo.
72:16-73:4).

Variations between the tasks required of different subcategories
of AM's result in disparities of how employees spend their time:

- One AM estimated that he spent two to four hours per day
  cleaning as a PPM, but only 1% of his time cleaning as a
  CSM. (Def. Ev. App. Ex. 39, Fritz Depo. 132:13-133:5).
- Conversely, the same AM testified that he spent 2-4% of
  his time on loss prevention as a CSM, but 10-15% of his
  time on loss prevention as a PPM. (Def. Ev. App. Ex.
  39, Fritz Depo. 133:8-134:17).
- Plaintiff spent five hours per week on scheduling as an
  OM, but did no such work as a CSM. (Def. Ev. App. Ex.
  41, Gover Depo. 153:1-18; Def. Ev. App. Ex. 42, Gover
  Depo. 303:21-25).

The varying day-to-day circumstances at any given store create
additional time allocation differences between AM's:

- One AM stated that the average time spent as Sales Lead
  cannot be estimated because "every day the
  responsibility just varied" and "there is no average."
  (Def. Ev. App. Ex. 46, O'Neal-Kannepalli Depo. 62:6-
  63:4).

- During a two-month period prior to opening a store, Plaintiff spent virtually all of his time for two months on interviewing, hiring, and training employees. (Def. Ev. App. Ex. 41, Gover Depo. 422:3-424:14).

- Plaintiff testified that he had seasonal responsibilities to act as Sales Lead and Manager on Duty during the spring and summer months. (Def. Ev. App. Ex. 42, Gover Depo. 248:13-25).

Defendant Best Buy's witnesses confirm that how each AM spends his or her time can only be determined through the detailed and individualized testimony of each AM:[3]

- **Among CSM's:** Ngo spends 12% of time supervising and directing work (Def. Ev. App. Ex. 21, Ngo Decl. ¶ 14), while Vithalani spends 36% of his time on these duties. Noel spends 2% of time on interviewing, selecting and

---

[3] Plaintiffs object that these time estimates are unreliable because the declarations come from current AM's, many of whom became AM's within the last year, and that most did not understand what this lawsuit was about. (Reply Ex. 2). Plaintiffs further contend that the percentage time allocations provided by Defendant Best Buy's declarants has no attribution of methodology, and is inherently unreliable because: (1) it groups exempt and non-exempt tasks together in single categories; (2) tasks overlap between categories; (3) employees performed tasks not on the list but were told that the allocation of time spent on listed tasks must total to 100%; (4) Best Buy, in analyzing these results, arbitrarily assigns exempt or non-exempt labels to entire task groups; (5) Best Buy converts hours to percentages based on scheduled shifts and not hours actually worked. (Reply 3). While the Court considers these objections in assessing the weight of the evidence, Plaintiffs have presented insufficient authority to show that the declarants' estimates of how they used their time are wholly unreliable or otherwise inadmissible. Indeed, Plaintiff raises inherent difficulties of developing uniform, accurate task lists and time estimates. Such difficulties further undermine any preponderance of common issues across AM's.

training (Def. Ev. App. Ex. 22, Noel Decl. ¶ 13), while both Ngo and Parra spend 10% of their time on these duties (Def. Ev. App. Ex. 21, Ngo Decl. ¶ 14, Def. Ev. App. Ex. 26, Parra Decl. ¶ 19).  Parra spends 2% of his time on managing the customer experience (Def. Ev. App. Ex. 26, Parra Decl. ¶ 19), while Um devotes 25% of his time to these duties (Def. Ev. App. Ex. 34, Um Decl. ¶ 12).

- **Among PPM's:** Allen devotes only 5% of time to managing loss prevention (Def. Ev. App. Ex. 8, Allen Decl. ¶ 15), while Walker spends 20% (Def. Ev. App. Ex. 37, Walker Decl. ¶ 15). Allen spends only 5% of his time managing merchandise and product flow (Def. Ev. App. Ex. 8, Allen Decl. ¶ 15), but Walker spends 25% (Def. Ev. App. Ex. 37, Walker Decl. ¶ 15).  Among Defendant Best Buy's witnesses, the time spent interviewing, selecting and training ranges from 2% (Def. Ev. App. Ex. 29, Santos Decl. ¶ 17), to 14% (Def. Ev. App. Ex. 12, Brizuela Decl. ¶ 16).

- **Among OM's:** Moye spends 10% of his time supervising and directing work (Def. Ev. App. Ex. 19, Moye Decl. ¶ 17), while Estrada devotes 40% to these duties (Def. Ev. App. Ex. 13, Estrada Decl. ¶ 15). Arrington spends 5% of time on payroll management related duties (Def. Ev. App. Ex. 11, Arrington Decl. ¶ 21), while Moye spends 20% (Def. Ev. App. Ex. 19, Moye Decl. ¶ 17). Moye spends no time on human resource management (*see* Def. Ev. App. Ex. 19,

14

Moye Decl. ¶ 17), while Arrington spends 15% of his time on such duties (Def. Ev. App. Ex. 11, Arrington Decl. ¶ 21).

### 3. Exempt versus Non-Exempt Tasks

To determine the applicability of a Wage Order exemption to a particular employee, the Court must examine whether an employee spends more than 51% of his time on managerial tasks. Marlo v. United Parcel Serv., 639 f.3d 942, 948 (9th Cir. 2011). The Court looks at "the work actually performed by the employee during the course of the workweek [. . .] first and foremost [. . .] together with the employer's realistic expectations." Wage Order 7-2001 § 1(3)(A)(1)(e). Under federal regulations, which are incorporated in Wage Order 7-2001 by reference, management activities include interviewing, selecting and training employees, setting and adjusting their pay and hours, directing their work, maintaining production and sales records, appraising employee productivity and efficiency, handling employee complaints and grievances, planning the work, determining techniques, apportioning work among employees, determining merchandise to be sold, controlling the flow and distribution of merchandise, and providing for safety. 29 C.F.R. § 541.102(b); see also Taylor v. United Parcel Serv., Inc., 190 Cal. App. 4th 1001, 1019-21 (2010). Exempt work also includes work that is not necessarily exempt itself, but is directly and closely related to exempt work. Wage Order 7-2001 § 1(A)(1)(d).

Plaintiffs contend that AM's spend the majority of their days performing non-managerial tasks. Plaintiffs contend that a study could be conducted using (1) information related to the budgets from corporate headquarters, (2) the allocation of labor dollars, and (3)

the decrease in store staffing over the class period, in order to
determine whether such staffing causes AM's to work additional hours to
complete the requisite store duties. (See Fitzpatrick Decl.).
Plaintiffs argue that additional statistical analysis can be performed
to determine time allocated to non-exempt tasks. (See Locker Decl.,
Gorman Decl.). Plaintiffs further argue that Defendant Best Buy has
itself conducted two surveys directed at learning how AM's spend their
time. Best Buy, while contending that there is no "average" assistant
manager, specifically refers to the "Current Average Manager" in its
survey. Furthermore, this survey recognizes that Best Buy understands
that its managers are not allocating their time in a way that matches
the stated job description. (Humphrey Reply Decl. Ex. 16).

However, as Defendant Best Buy contends, many of Plaintiffs'
witnesses do not adequately detail the nature of certain tasks, such as
customer interactions, which oversimplifies the variation inherent in
the role of AM. Variations in the circumstances of time spent on the
sales floor or of a customer interaction mean that the tasks may
constitute exempt or non-exempt work. Assistant Managers may interact
with customers in an exempt capacity where they act to approve pricing
outside Best Buy policy, address returns or refunds outside policy,
decide on discounts for bundled products, and train hourly Associates.
(See, e.g., Def. Ev. App. Ex. 39, Fritz Depo. 83:7-84:11). Plaintiff
states that when acting as Manager on Duty or Sales Lead, he "was
primarily engaged in customer related activities." (Gover Decl. ¶ 8).
Likewise, another witness of Plaintiffs states, "[d]ue to
understaffing, much of my time was spent putting out fires which were
almost always related to customer issues and sales." (Dobbie Decl.

¶ 7).  Such statements not only do not necessarily bear on whether a task is exempt, but also do not show whether AM's were commonly engaged in the same exempt or non-exempt task.  Thus, even assuming that Plaintiffs have shown that AM's commonly and uniformly spend a majority of their time on the sales floor, Plaintiffs have not adequately shown that AM's are commonly and uniformly spending their time on similar exempt or non-exempt tasks on the sales floor.

Rather, as Defendant Best Buy argues, Plaintiffs have not adequately shown that resolution of this exemption would not require a detailed, individualized analysis of how each employee spends his or her time.  While Plaintiff points to various standardized procedures and systems used by Best Buy, these items do not adequately bear on the critical question of whether AM's consistently and similarly spend their time on non-exempt tasks.  Plaintiffs cite Sav-On Drug Stores, Inc. v. Superior Court, 34 Cal. 4th 319 (2004), where the court stated that "how the employee actually spends his or her time did not create or imply a requirement that the courts assess an employer's affirmative exemption defense against every class member's claim before certifying an overtime class action."  Id. at 336-37. However, the burden is nonetheless on Plaintiffs to show that common issues predominate among class members.  Marlo, 639 F.3d at 947-48. Plaintiffs do not sufficiently show that any centralized policy at Best Buy governed how AM's, or any of the proposed subclasses, spent their time, or that there is any other generalized means of determining how a given AM spent his time that rises beyond the speculative.  See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 946-47 (9th Cir. 2009).  In wage and hour disputes, "where a defendant claims exemptions ...

individualized inquiries about the actual hours worked, percentage of exempt versus non-exempt work performed, particular job experiences, and other inquiries are critical."  Spainhower v. U.S. Bank Nat. Ass'n, 2010 WL 1408105, at *4 (C.D. Cal. Mar. 25, 2010) (citing In re Wells Fargo Home Mort., 571 F.3d at 956).  Thus, Plaintiffs have not adequately presented common evidence that would eliminate the need for individualized inquiry into how each employee spends his time.  Accordingly, Plaintiff has not shown that common factual and legal issues predominate over the need for individualized inquiry and certification of the proposed class and subclasses for purposes of this exemption is DENIED.  Fed. R. Civ. P. 23(b)(3); Wage Order 7-2001 §§1(3)(A)(1)(e).

> **4.    Customary Exercise of Independent Judgment and Discretion**

The second exemption at issue requires that employees "customarily and regularly exercise independent judgment and discretion."  Wage Order 7-2001 §§1(3)(A)(d).  The term "judgment and discretion," under the federal regulations which inform the state regulations, involves "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered . . .  Impl[ying] that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance."  29 C.F.R. 541.207(a).  "Customarily and regularly" in turn signifies a frequency greater than occasional but less than constant, met by the employee who normally and recurrently does so in the day-to-day performance of duties.  29 C.F.R. 541.207(g).

Management duties generally involve exercise of discretion and judgment. _See, e.g., Baldwin v. Trailer Inns, Inc._, 266 F.3d 1104, 1115 (9th Cir. 2001) (implementing policies and procedures, even where frequently performing the same tasks as subordinates, involves discretion and judgment); _Donovan v. Burger King Corp._, 672 F.2d 221, 226 (1st Cir. 1982) (even where well-defined corporate policies spell out tasks in great detail, ensuring that company policies are carried out constitutes the "very essence" of supervisory work); _Palazzolo-Robinson v. Sharis Mgmt. Corp._, 68 F. Supp. 2d 1186, 1191 (W.D. Wash. 1999)(handling customer complaints is a discretionary function); _Taylor v. United Parcel Serv., Inc._, 190 Cal. App. 4th at 1024-25 (training, performance appraisals, and discipline involve discretion in matters of significance).

Plaintiffs argue that this exemption is susceptible to common proof because of Best Buy's reliance on corporate procedures that eliminate meaningful discretion from the work of AM's. Mot. 19-20. Plaintiffs cite a list of areas and procedures in which AM's lack discretion, including:

- Managing pre-allocated labor dollars (Tab 3, Gover Decl. ¶ 12);

- Planogram control over inventory (Humphrey Decl. Ex. 10, Dias Depo. 71:13-16, 73:3-21); and

- Inability to do more than offer suggestions for types of products carried at the store (Humphrey Decl. Ex. 10, Dias Depo. 71:13-16, 73:3-21).

Defendant Best Buy contends that AM's exercise independent judgment and discretion in numerous decisions ignored by Plaintiffs. Best Buy highlights a number of areas where the named Plaintiff himself exercised independent judgment and discretion:

- Coaching and directing hourly associates. (Def. Ev. App. Ex. 41, Gover Depo. 85:8-87:19).
- Handling staffing problems. (Id. at 111:14-25).
- Determining employee goals and assignments. (Id. at 114:13-115:6).
- Deciding when and who to send home early. (Id. at 117:9-14).
- Scheduling to increase sales. (Id. at 153:24-155:21).
- Deciding when to have employees work overtime. (Id. at 156:20-24).
- Deciding how to display product. (Id. at 157:20-158:15).
- Approving vacation requests and scheduling changes. (Id. at 456:16-457:21).
- Determining what supplies to purchase for the store. (Def. Ev. App. Ex. 42, Gover Depo. 333:25-334:6).
- Determining where to put product not on a planogram. (Id. at 234:3-25).
- Choosing what products to stock in flex areas. (Id. at 234:3-25).
- Developing strategies to reduce shrink. (Id. at 244:1-23).

- Improving advertisement pricing and display accuracy. (<u>Id.</u> at 299:9-18).

- Setting up contests to improve efficiency. (<u>Id.</u> at 299:24-300:3).

- Creating tests to train associates. (<u>Id.</u> at 300:4-18).

- Performing the job largely without talking to a GM. (Def. Ev. App. Ex. 41, Gover Depo. at 103:3-10).

Additional areas of discretion and independent judgment identified by other AM's include:

- Discounting and pricing outside Best Buy guidelines. (<u>See, e.g.</u>, Def. Ev. App. Ex. 27, Pickup Decl. ¶ 12).

- Allowing out-of-policy returns and refunds. (<u>See, e.g.</u>, Def. Ev. App. Ex. 29, Santos Decl. ¶ 8).

- Bundling products at a reduced price outside Best Buy guidelines. (<u>See, e.g.</u>, Def. Ev. App. Ex. 30, Schilling Decl. ¶ 8).

- Pricing on open box and discontinued products. (<u>See, e.g.</u>, Def. Ev. App. Ex. 23, Olson Decl. ¶ 19).

- Handling customer issues and complaints. (<u>Id.</u>).

- Setting employee work assignments and priorities. (<u>See, e.g.</u>, Def. Ev. App. Ex. 12, Brizuela Decl. ¶ 20).

- Deciding when to order more of a product than provided for in the inventory system. (<u>See, e.g.</u>, Def. Ev. App. Ex. 9, Alvarez Decl. ¶ 17).

- Deciding when and where to move associates within the store during the work day. (<u>See, e.g.</u>, Def. Ev. App. Ex. 14, Hagar Decl. ¶ 13).

- Disciplining employees. (<u>See, e.g.</u>, Def. Ev. App. Ex. 29, Santos Decl. ¶ 7).

- Taking remedial action to address employee performance concerns. (<u>See, e.g.</u>, Def. Ev. App. Ex. 20, Nadanusa Decl. ¶ 12).

- Making business cases for new product offerings. (<u>See, e.g.</u>, Def. Ev. App. Ex. 26, Parra Decl. ¶ 17).

- Revising labor forecasts and budgets. (<u>See, e.g.</u>, Def. Ev. App. Ex. 32, Stotts Decl. ¶ 6).

- Motivating employees. (<u>See, e.g.</u>, Def. Ev. App. Ex. 19, Moye Decl. ¶ 7).

- Addressing employee disputes. (<u>See, e.g.</u>, Def. Ev. App. Ex. 34, Um Decl. ¶ 14, Def. Ev. App. Ex. 17, Lisby Decl. ¶ 11).

- Addressing inventory discrepancies. (<u>See, e.g.</u>, Def. Ev. App. Ex. 8, Allen Decl. ¶ 13).

- Finding creative ways to grow the business. (<u>See, e.g.</u>, Def. Ev. App. Ex. 22, Noel Decl. ¶¶ 11-12).

- Revising budgets and sales goals. (<u>See, e.g.</u>, Def. Ev. App. Ex. 23, Olson Decl. ¶ 11).

- Deciding when to deviate from planograms. (<u>See, e.g.</u>, Def. Ev. App. Ex. 24, Orozco Decl. ¶ 13).

- Handling customer injury claims. (<u>See, e.g.</u>, Def. Ev. App. Ex. 35, Valentine Decl. ¶ 13).

Without deciding whether each individual example cited by Plaintiff or Defendant Best Buy qualifies as the exercise of judgment or discretion, the parties have adequately shown that some of the

realistic requirements of the AM job require independent judgment and discretion, while others do not.[4] However, Plaintiffs have not shown that whether AM's "customarily" and "regularly" exercise discretion is subject to class-wide proof. As discussed above in the context of exempt and non-exempt tasks, Plaintiffs have not adequately shown a sufficient preponderance of common facts among proposed class members such that a detailed and individualized inquiry into how each individual AM spends his or her time would not be necessary. Plaintiffs have not adequately demonstrated through declarations, corporate policy, or other sources that there is common evidence to support a class-wide judgment that is not merely speculative. See Marlo., 251 F.R.D. at 486. Accordingly, Plaintiffs have not carried their burden of showing that class-wide factual and legal issues common to AM's, or any of the proposed subclasses of AM's, predominate over questions affecting individual members, and therefore class certification of the proposed class and subclasses on the issue of this exemption is denied. See Fed. R. Civ. P. 23(b)(3); Wage Order 7-2001 §§1(3)(A)(1)(d).

### 5. "Production Employees"

Finally, Plaintiffs contend that in addition to the standard for an exemption under the statute, that there is an additional test as to whether an individual is employed in an administrative, executive, or professional "capacity." Plaintiffs cite Bell v. Farmers, 87 Cal. App. 4th 805, 811 (2001), to suggest that an administrative/production worker dichotomy in Wage Order 4-2001 would also apply to an

---

[4] To the extent that reaching this conclusion implicitly requires analysis on the merits, it is unavoidable in order to properly address the issue of commonality. See Dukes, 131 S. Ct. at 2551-52.

executive/production worker dichotomy under Wage Order 7-2001.  In
Bell, the court distinguished exempt administrative employees
performing work related to management policies or general business
operations from non-exempt production employees whose primary duty is
producing the commodity or commodities that the enterprise exists to
produce.  Bell, 87 Cal. App. 4th at 820.

However, as Defendant Best Buy argues, Plaintiffs cite no
authority suggesting that an executive/production dichotomy exists in
parallel to the administrative/production dichotomy.[5]  Even if such a
dichotomy were to apply, or for purposes of addressing any separate
administrative exemption, Plaintiffs do not adequately demonstrate what
standard would apply, and whether it could be applied to AM's.
Moreover, even if any such standard could be applied to an individual
AM, Plaintiffs do not adequately demonstrate that it would be
susceptible to common proof and otherwise subject to class
certification.  Accordingly, Plaintiffs present inadequate basis to
certify the proposed class or subclasses based on any purported
executive/production dichotomy.

### C.    Rule 23(a):  Ascertainability, Typicality, Adequacy

Because Plaintiff has not adequately shown a preponderance of
common issues under Rule 23(b)(3), the Court need not reach the issues
under Rule 23(a) of numerosity, typicality, or adequacy.

### D.    Damages, Manageability, and Superiority

As the Court denies certification on issues of Rule 23(b)(3)
commonality, it need not reach the issue of whether damages would be

---

[5]  Nor do Plaintiffs cite authority that a standard regarding the
administrative exemption from Wage Order 4-2001 is necessarily
applicable to the executive exemption in Wage Order 7-2001.

determinable under a class action.  Likewise, the Court need not reach whether a class action is manageable and superior.

**E. California Business & Professions Code § 17200**

Plaintiffs' claims under California Business & Professions Code Section 17200 are derivative of the remaining claims, therefore they are not certifiable because the Court does not find Plaintiffs' other claims certifiable.

**IV. Conclusion**

The Court hereby DENIES Plaintiffs' Motion for Class Certification for the reasons set forth in this order.  Defendant's Motion to File a Surreply is DENIED as moot.

IT IS SO ORDERED.

DATED: November 22, 2011

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE